## JEREMIAH POWELL v. WILLIAM HITCHNER.

1. When the application for the appointment of surveyors, to lay out a private road, pursues the words of the act, and is embodied in the order of appointment, and both show that the road applied for is to run to and from the land of the applicant, the return of the surveyors, " that they think and adjudge the said private road to be necessary, and do lay out the same," is sufficient, without adding that the road was laid to and from the applicant's land.

2. A material variance in the description of the road, as applied for, and as laid out by the surveyors, will vitiate the return.   What is a sufficient variance considered, and the cases examined.

3. Since the act of April 6th, 1865, a judge in vacation may allow a writ of *certiorari* in road cases.

4. Where two persons sign a caveat against recording a return of surveyors, either may sue out a writ of *certiorari*, without joining the other.   Their interest is several, and not joint.

*Certiorari* to the Common Pleas of Salem, to remove proceedings in a road case.

The reasons assigned for setting aside the return of the surveyors were argued before Justices WOODHULL and DALRIMPLE, and are sufficiently stated in the opinion delivered.

For the plaintiff, *Martin P. Grey.*

For the defendant, *S. A. Allen.*

The opinion of the court was delivered by

WOODHULL, J. The *certiorari* in this case was directed to the Common Pleas of the county of Salem, to bring up the proceedings in a matter of a private road, in the township of Lower Alloways Creek, in that county.   The reasons relied upon for setting aside the return and proceedings are as follows :

1.  " Because the surveyors did not return the private road

applied for by the defendant, to be necessary from or to his land, mill, market, private landing, or public road."

The return of the surveyors is, that they "think and adjudge the said private road to be necessary, and do lay the same." Does this return satisfy the requirements of the statute? The application for the road, as recited in the order of appointment, and embodied in the return of the surveyors, is full and specific, following exactly the language of that section of the act which relates to private roads. The applicant sets forth, "that he thinks a private road to be necessary in the township of Lower Alloways Creek, to and from his land in said township." The words "to and from his land," are unquestionably essential in this application. They cannot be dispensed with, because, without them, the applicant would have no standing in court, and the court no authority at all to act in the case. But it does not follow from this that the surveyors were bound to repeat these words in their return. Who may apply for a private road, and how the application must be made, we learn from the fourth section of the act. *Nix. Dig.* 738.* The fifth section of the same act informs us, with equal clearness, what the surveyors are to do, and how they are to do it, with reference to both public and private roads. "They shall view the premises, and may, if they shall think it necessary, lay out, vacate, or alter the said public or private road, and lay out the same," &c., "and make return thereof." This the surveyors have done, following the directions of the statute with almost literal exactness, and certifying that they "think and adjudge the said private road to be necessary." Having done this, they have done all that was required of them in this respect. I find nothing in the act to indicate either the necessity or the propriety of any fuller or more specific designation of a private road, than that which the surveyors have adopted in the present case.

2. "The second reason is, that the road laid by the surveyors deviates materially from the description of the road applied for."

* *Rev.*, p. 993, §§ 4, 5.

The application was for a road, beginning at a stake set at the west end of the old Marsh road, on the land of James Baker, and running from thence a northwesterly direction, through lands of the said James Baker and Job Stretch, jun., one quarter of a chain, to a stake set in the land of Job Stretch, jun.; and still running from thence a southwesterly direction, through lands of the said Job Stretch, jun., Jeremiah Powell, and Benjamin Allen, eighteen chains, to a stake set in the land of Samuel Sheppard; and still running from thence a westerly direction, through lands of the said Samuel Sheppard, eleven chains, to a stake set on the west side of Fogg's ditch, in the edge of land belonging to the said James Baker, and there to end."

The beginning point of the road, as laid out, is the same as that in the application. From thence, it runs south seventy-nine degrees west, ninety links, to a stake on Job Stretch, jun.; thence through and along Stretch and Jeremiah Powell, north fifty-four degrees west, ninety links, to a stake; thence along lands of Jeremiah Powell and Benjamin Allen, or on their lands, south seventy-eight and three-fourths degrees west, twelve chains and seventy-three links, to a stake; thence through lands of Job Stretch, jun., south sixty-one and three-fourths degrees west, five chains and ninety-four links; thence through the said Stretch, north twenty-one and one-half degrees west, four chains and thirty-five links; thence along and through Job Stretch, jun., and Jeremiah Powell, south seventy-two and one-half degrees west, ten chains and thirty-six links, to a stake set, &c., (as in the application,) and there to end."

The second course of the road described in the application, was to end at a stake set in the land of Samuel Sheppard, at the distance of eighteen and one-fourth chains from the beginning, and from thence to the end, the road was to run through Sheppard's land. The road laid out by the surveyors does not pass through Sheppard's land at all, nor touch it at any point.

It appears to follow the general direction called for in the

application, until it reaches the end of the fourth course. There it turns abruptly, and runs nearly at right angles with that direction, four chains, thirty-five links, and from thence returning again to the general direction, ten chains, thirty-six links to the end.

The effect of this was to shift a considerable portion of the road—more than four chains—further north than the route applied for, and to throw the last course upon the land of the caveator, instead of that of Samuel Sheppard. The road as laid out, must cover ground substantially with that described in the application, and the order of the court. In this case, no such correspondence can be found. In the case of *The State* v. *French et al.*, 2 *Zab.* 736, the variance was not so great as here, nor so likely to mislead parties interested in the road; and yet Chief Justice Green, delivering the opinion of the court, says: " So great a discrepancy between the application and return, has invariably been · held fatal to the validity of the return." Although that case related to a public road, there is nothing to distinguish it in principle from the one now under consideration. Upon the authority of that decision, and the cases cited in support of it, I have no hesitation in saying that for the second reason assigned, the return in this case must be set aside.

Several preliminary objections were raised by the defendant's counsel, who insisted that the writ should be quashed.

1. Because it was allowed by a judge in vacation. But the writ in this case was allowed after the passage of the act of April 6th, 1865, (*Pamph. L.* 799,) which expressly authorizes such an allowance by a judge at chambers, either in term or vacation.

2. Because the proper parties are not here prosecuting this writ.

In support of this objection, it was urged that there having been two caveators in this case, the plaintiff and another, the plaintiff cannot proceed alone without a summons and severance, or something equivalent to that. There is nothing in this objection. The mere fact that two or more

persons choose to unite in signing and filing a caveat does not so bind them together that one cannot afterwards sue out and prosecute a writ of *certiorari* without the others. Their interest in the matter is essentially several and not joint.

3. Because no motion had been made to set aside the return before the appointment of freeholders. In support of this, the case of *Biddle* v. *Danser, Spencer* 633, was cited. But this case, so far as it can be supposed to give any countenance to the objection in question, has been overruled by the case of *The State* v. *Vanderveer*, 1 *Dutcher* 233.

The return and proceedings must be set aside.